**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRT TRANSPORTATION, INC. D/B/A CHICAGO TROLLEY CO., | |
| PLAINTIFF, | CIVIL ACTION |
| v. | |
| CHICAGO TROLLEY RENTALS, INC. and YILDIRIM B. AKSOY, | Case Number: 1:11-CV-3693 |
| DEFENDANTS. | JURY TRIAL DEMANDED |

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTER CLAIMS
SEEKING DECLARATORY JUDGMENT**

Defendant Chicago Trolley Rentals, Inc. (hereinafter "CTRI"), by and through counsel, hereby answers the Complaint filed by Plaintiff TRT Transportation, Inc. (hereinafter "TRT") as set forth below, and hereby brings counterclaims against TRT requesting declaratory judgment. Unless specifically admitted, CTRI denies each of the allegations of Plaintiff. For convenience, the language of each specific numbered paragraph in the Complaint is followed by Defendant's response.

**SUBJECT MATTER JURISDICTION AND VENUE**

1.      This is an action for trademark infringement, unfair competition, and cybersquatting under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1501 *et seq.* ("Lanham Act"), and for trademark infringement, dilution, deceptive trade practices, unfair competition, passing off and unjust enrichment under the Laws of the State of Illinois.

**ANSWER**:    Without admitting that the Complaint states any claim upon which relief may be granted, CTRI admits that Plaintiff purports to state the claims as iterated in Paragraph 1.

2.    This Court has subject matter jurisdiction over the claims in this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1367.

**ANSWER**:    Without admitting that the Complaint states any claim upon which relief may be granted, CTRI admits that this Court has jurisdiction pursuant to the authority listed in Paragraph 2.

3.    This Court has supplemental jurisdiction over the claims in this complaint that arise under Illinois statutory and common law, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**ANSWER**:    Without admitting that the Complaint states any claim upon which relief may be granted, CTRI admits that this Court has jurisdiction pursuant to the authority listed in Paragraph 3.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events giving rise to the claims have occurred and are occurring in this district.

**ANSWER**:    Without admitting that the Complaint states any claim upon which relief may be granted, CTRI admits that venue is proper in this Court pursuant to the authority listed in Paragraph 4.

**PARTIES AND PERSONAL JURISDICTION**

5.    Plaintiff TRT Transportation, Inc. d/b/a Chicago Trolley Co. ("Chicago Trolley") is a corporation duly organized and existing under the laws of the State of Illinois, having an office and principal place of business at 615 West 41st Street, Chicago, Illinois.

**ANSWER**:    CTRI lacks knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations of Paragraph 5, and therefore denies the same.

6.      Upon information and belief, defendant Chicago Trolley Rentals, Inc. ("CTRI") is a corporation duly organized and existing under the laws of the State of Illinois, having an office and principal place of business at 3516 North Lawndale Avenue, Chicago, Illinois.

**ANSWER:**    CTRI admits the allegations contained in Paragraph 6.

7.      Upon information and belief, defendant Yildirim Aksoy ("Aksoy") is an individual residing in this district and doing business under the name "Chicago Trolley Rentals" at 3516 North Lawndale Avenue, Chicago, Illinois.   Upon information and belief, Aksoy is the president of Chicago Trolley Rentals, Inc. and has actively participated in the acts complained of herein.

**ANSWER:**    CTRI admits that Defendant Aksoy is an individual residing in this

district at 3516 North Lawndale Avenue, Chicago, Illinois and that he is the president of

Chicago Trolley Rentals, Inc., but denies that that he is an individual who does business

under the name of Chicago Trolley Rentals.   CTRI further states that Aksoy is an

improper party to this litigation. *See* Def. Aksoy's Pending Motion to Dismiss for

Improper Party.

## CHICAGO TROLLEY AND ITS MARKS

8.      Chicago Trolley was founded in 1993 with the purpose of operating entertaining and informative tours of metropolitan Chicago.  Since at least as early as April 1994, Chicago Trolley has used the trademark CHICAGO TROLLEY in connection with sightseeing services.

**ANSWER**:    CTRI lacks knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations of Paragraph 8, and therefore denies the same

9.     Over the past 17 years, Chicago Trolley has grown to be an award-winning, market leader in the industry.  It is the largest tour operator in the Chicago area, and has the largest trolley fleet in the Midwest.

**ANSWER**:    CTRI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 9, and therefore denies the same.

10.     In addition to its sightseeing services, Chicago Trolley also rents out its trolleys for parties, weddings, pub crawls, and other special events.  Chicago Trolley also offers advertising services, informational services, and ancillary products such as t-shirt and hats in connection with its CHICAGO TROLLEY trademark.

**ANSWER**:    CTRI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 10, and therefore denies the same.

11.     For over 15 years, Chicago Trolley used has a distinctive red and green trade dress, consisting of San Francisco-style trolleys with red paint on the lower half of the trolley, green paint on the upper half of the trolley, and yellow trim (the "Red and Green Trolley Trade Dress").  Photographs of plaintiff's trolleys utilizing its Red and Green Trolley Trade Dress are attached as Exhibit 1.

**ANSWER**:    CTRI admits that Plaintiff has attached photos of trolleys as Exhibit 1 to the Complaint.  CTRI denies that the red and green paint used by Plaintiff is distinctive or trade dress and objects to such allegations as improper conclusions of law and/or fact.  CTRI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of the allegations of Paragraph 11, and therefore denies the same.

12.     In connection with its goods and services, Chicago Trolley has used the marks and names "CHICAGO TROLLEY," "CHICAGO TROLLEY & DOUBLE DECKER CO.," "RIDE THE RED & GREEN TROLLEYS," and a distinctive Red and Green Trolley Trade Dress for many years (the "Chicago Trolley Marks").

**ANSWER**: CTRI denies that the red and green paint used by Plaintiff is distinctive or trade dress and objects to such allegations as improper conclusions of law and/or fact. CTRI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of the allegations contained Paragraph 12, and therefore denies the same.

13. In addition, Chicago Trolley owns federal trademark registrations for the following: CHICAGO TROLLEY, U.S. Registration No. 2,586,774; CHICAGO TROLLEY, U.S. Registration No. 2,644,925; RIDE THE RED & GREEN TROLLEY, U.S. Registration No. 2,537,578; and CHICAGO TROLLEY & DOUBLE DECKER CO. & Design, U.S. Registration No. 3,827,079 (the "Chicago Trolley Registrations"). Copies of these registrations are attached as Exhibits 2, 3, 4, and 5 and are incorporated herein by reference. The registrations identified above are valid and subsisting.

**ANSWER**: Without admitting that any of the registrations listed above are valid, CTRI admits that Plaintiff owns the above listed registrations and that they are attached as Exhibits to the Complaint. CTRI denies the final sentence of Paragraph 13.

14. In 1998, Chicago Trolley Registered the domain name chicagotrolley.com and since that times has advertised its services on the internet via its website displayed at www.chicagotrolley.com.

**ANSWER**: CTRI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 14, and therefore denies the same.

15. Chicago Trolley operates over 50 trolleys in Chicago that bear the Red and Green Trolley Trade Dress and the CHICAGO TROLLEY service marks. Plaintiff's Red and Green Trolleys have become ubiquitous in Chicago and are well recognized by Chicagoans and tourists alike as originating with Chicago Trolley.

**ANSWER**: CTRI denies the allegations of Paragraph 15 and objects to such allegations as improper conclusions of law and/or fact.

16.     Chicago Trolley has extensively advertised its goods and services in numerous media, including television, the internet, magazines, brochures, maps, airline boarding passes and itineraries, trade shows, hotel desk displays, theater programs, html email, visitors center signage, retail locations including major museums, in-flight magazines, and on its own website at www.chicagotrolley.com. These advertisements prominently feature the Chicago Trolley Marks.

**ANSWER**:     CTRI lacks knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations of Paragraph 16, and therefore denies the same.

17.     Chicago Trolley's recent promotional efforts include advertisements on the websites of The Magnificent Mile, the Chicago Bar Project, and Hereschicago.com, copies of which are attached as Exhibits 6, 7, and 8.

**ANSWER**:     CTRI admits that the above listed Exhibits are attached to the

Complaint, but lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the remaining allegations of Paragraph 17, and therefore denies the same.

18.     Chicago Trolley's Red and Green Trolleys bearing the Chicago Trolley Marks have appeared in numerous local and national television news segments, clips of which are available on Chicago Trolley's YouTube channel at www.youtube.com/chicagotrolley.

**ANSWER**:     CTRI lacks knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations of Paragraph 18, and therefore denies the same.

19.     As a result of the longstanding use and promotion of the Chicago Trolley Marks, these marks represent considerable goodwill and value to Chicago Trolley. The result of Chicago Trolley's efforts and investment is that consumers have come to know, rely on and recognize its goods and services by the Chicago Trolley Marks.

**ANSWER**:     CTRI denies the allegations contained in Paragraph 19.

20.     The Chicago Trolley Marks have acquired secondary meaning and have become exclusively associated by the public and the trade with Chicago trolley's sightseeing services and related goods and services.

**ANSWER**:     CTRI denies the allegations contained in Paragraph 20 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

21.     The Chicago Trolley Marks are famous in Illinois.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 21 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

## DEFENDANTS' INFRINGING ACTIVITIES

22.     On information and belief, long after Chicago Trolley began using the Chicago Trolley Marks and after Chicago Trolley had registered the Marks, Defendants launched a competing business offering substantially identical services under the name "Chicago Trolley Rentals."   According to its website at www.chicagotrolleyrentals.com, a copy of which is attached as Exhibit 9, Chicago Trolley Rentals offers trolleys for rent for tours parties, weddings, and pub crawls.   The website depicts several trolleys that utilize red and green trade dress and appear virtually identical to Chicago Trolley's Red and Green Trolley Trade Dress.

**ANSWER**:    CTRI denies the first sentence of Paragraph 22.   CTRI admits that

CTRI offers trolleys for rent for tours parties, weddings, and pub crawls, that CTRI's

website features photographs of several trolleys, and that Exhibit 9 attached to

Plaintiff's complaint depicts one page of CTRI's website.   CTRI denies the remainder of

the allegations of Paragraph 22.

23.     The similarities between the physical appearance and the trade dress of the two trolleys are striking, and not accidental and is best illustrated by this comparison (attached hereto as Exhibit 10):   PHOTO EXCLUDED FROM ANSWER

**ANSWER**:    CTRI admits that the stated Exhibit is attached to the Complaint

and denies the remaining allegations contained in Paragraph 23.

24.     The "Chicago Trolley Rentals" name and the Defendants' red and green trolley trade dress are hereafter referred to as the "Infringing Marks."

**ANSWER**:   CTRI denies the allegations contained in Paragraph 24 and objects to the allegations as improper conclusions of law and/or fact.

25.     On July 15, 2010, plaintiff's counsel sent defendants a cease and desist letter. (attached hereto at Exhibit 11).  Defendants initially responded through counsel, and then chose to communicate with plaintiff's counsel directly, but the defendants have not ceased their unauthorized imitation of the Chicago Trolley Marks or the infringing domain name chicagotrolleyrentals.com.

**ANSWER**:   CTRI denies the allegations contained in the second half of the second sentence of Paragraph 25 (starting with "but the defendants" and ending at the end of the paragraph).  CTRI admits the remainder of the allegations contained in Paragraph 25.

26.     Just a few days after receiving plaintiff's cease and desist letter, on July 20, 2010, defendant Aksoy filed application Serial No. 85/088,310 (a copy of which is attached as Exhibit 12) to register the mark CHICAGO TROLLEY RENTALS in connection with "Transportation management services, namely, planning and coordinating transportation of people for others."

**ANSWER:**   CTRI denies that Aksoy filed the cited application as an individual and admits the remainder of the allegations contained in Paragraph 26.

27.     On November 3, 2010, the United States Patent and Trademark Office refused registration of Aksoy's trademark application on the grounds that it was, *inter alia*, likely to cause confusion with Plaintiff's trademark Registration No. 2586774 (attached hereto as Exhibit 13 with relevant enclosures) for its CHICAGO TROLLEY trademark.

**ANSWER**:   CTRI denies that Aksoy filed the cited application as an individual and admits the remainder of the allegations contained in Paragraph 27.

28.     Between July 2010 and March 2011, plaintiff's counsel made multiple attempts to amicably resolve this dispute, but has been unable to do so.

**ANSWER**:   CTRI admits the allegations contained in Paragraph 28.

29.     On March 9, 2011, plaintiff's counsel sent a follow-up letter to defendants (attached hereto at Exhibit 14).  Defendants have not responded to this letter.

**ANSWER:**  CTRI admits the allegations contained in the first sentence of Paragraph 29 and deny the remainder of the allegations contained in Paragraph 29.

30.     On information and belief, defendants intend to continue their unauthorized imitation of the Chicago Trolley marks and the infringing domain name Chicagotrolleyrentals.com (attached hereto as Exhibit 15).

**ANSWER**:   CTRI denies the allegations contained in Paragraph 30, except admits that the Exhibit cited is attached to Plaintiff's Complaint, and objects to the allegations contained therein as improper conclusions of law and/or fact.

31.     Defendants' use of the Infringing Marks in commerce is without the permission, license or authority of Chicago Trolley.  Such use is confusingly similar to the Chicago Trolley Marks.

**ANSWER:**   CTRI denies the allegations contained in Paragraph 31 and objects to the allegations contained therein as improper conclusions of law and/or fact.

32.     On information and belief, Defendants began their infringement of the Chicago Trolley Marks with full knowledge of Chicago Trolley's prior use of the Marks. On information and belief, Defendants undertook these actions with the intent of confusing consumers, so that he could trade on and receive the benefit of the goodwill built up by Chicago Trolley at great labor and expense over many years.

**ANSWER:**   CTRI denies the allegations contained in Paragraph 32 and objects to the allegations contained therein as improper conclusions of law and/or fact.

33.     Defendants are using the Infringing Marks in commerce in the United States, and in this District, in an effort to trade on Chicago Trolley's valuable goodwill.

**ANSWER:**   CTRI denies the allegations contained in Paragraph 33 and objects to the allegations contained therein as improper conclusions of law and/or fact.

34.     Defendants began utilizing the Infringing Marks long after Chicago Trolley began use of the Chicago Trolley Marks, and long after the Chicago Trolley Marks became famous in Illinois.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 34 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

35.     Upon information and belief, defendants have and continue to act in concert with regard to the infringing activities complained of herein.

**ANSWER:**    CTRI denies the allegations contained in Paragraph 35.

## EFFECT OF DEFENDANTS' ACTIVITIES ON THE CONSUMING PUBLIC AND/OR PLAINTIFF

36.     The use of the Infringing Marks by Defendants in the manner described above is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation, connection or association of Defendants with Chicago Trolley, or as to the origin, sponsorship, or approval of the goods and services and/or website of Defendants by Chicago Trolley.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 36 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

37.     Use in commerce of the Infringing Marks by Defendants is likely to cause dilution of the distinctive quality of the Chicago Trolley Marks.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 37 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

38.     Use of the Infringing Marks by Defendants in the manner described above falsely indicates to the purchasing public that the goods and/or website of Defendants originate with Chicago Trolley, or are affiliated, connected or associated with Chicago Trolley, or are sponsored, endorsed, or approved by Chicago Trolley, or are in some manner related to Chicago Trolley.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 38 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

39.    Use of the Infringing Marks by Defendants in the manner described above falsely designates the origin of the goods and/or website of Defendants, and falsely and misleadingly describes and represents material facts with respect to the goods, websites and/or commercial activities of Defendants.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 39 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

40.    Use of the Infringing Marks by Defendants in the manner described above enables Defendants to trade on and receive the benefit of goodwill in those marks, which Chicago Trolley has built up at great labor and expense over many years.  Use of the Infringing Marks by Defendants in the manner described above also enables Defendants to gain acceptance for their goods and services and/or website, not solely on their own merits, but on the reputation and goodwill of Chicago Trolley and the Chicago Trolley Marks.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 40 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

41.    Use of the Infringing Marks by Defendants in the manner described above unjustly enriches Defendants at Chicago Trolley' expense.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 41 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

42.    Use of the Infringing Marks by Defendants in the manner described above removes from Chicago Trolley the ability to control the nature and quality of products provided under those marks and places the valuable reputation and goodwill of Chicago Trolley in the hands of Defendants, over whom Chicago Trolley has no control.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 42.

43.    The activities of Defendants have cause irreparable injury to Chicago Trolley and to the public and, unless restrained by this Court, will continue to cause irreparable injury to Chicago Trolley and to the public.  There is no adequate remedy at law for this injury.

**ANSWER**: CTRI denies the allegations contained in Paragraph 43 and objects to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A FIRST CLAIM
### Federal Trademark Infringement
### (15 U.S.C. § 1114(1))

44. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**: CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

45. Defendants' acts constitute infringement of federally registered Chicago Trolley registrations in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

**ANSWER**: CTRI denies the allegations contained in Paragraph 45 and objects to the allegations contained therein as improper conclusions of law and/or fact.

46. Defendants' acts have been willful and in bad faith making this an exceptional case in the meaning of 15 U.S.C. § 1117.

**ANSWER:** CTRI denies the allegations contained in Paragraph 46 and objects to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A SECOND CLAIM
### Federal Common Law Trademark Infringement
### (15 U.S.C. § 1125(a))

47. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**: CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

48. Defendants' acts constitute trademark infringement of Chicago Trolley Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER**: CTRI denies the allegations contained in Paragraph 48 and objects to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A THIRD CLAIM
### Federal Trade Dress Infringement
### (15 U.S.C. § 1125(a))

49. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**: CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

50. The Red and Green Trolley Trade Dress is decorative and not functional.

**ANSWER:** CTRI denies the allegations contained in Paragraph 50 and objects to the allegations contained therein as improper conclusions of law and/or fact.

51. Defendant's acts constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

**ANSWER**: CTRI denies the allegations contained in Paragraph 51 and objects to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A FOURTH CLAIM
**Federal Cybersquatting**
**(15 U.S.C. § 1125(d))**

52.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:    CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

53.    Defendants' have registered, trafficked in, and/or used the chicagotrolleyrentals.com domain name.

**ANSWER**:    CTRI admits the allegations contained in Paragraph 53.

54.    The chicagotrolleyrentals.com domain name is identical or confusing similar to the Chicago Trolley Marks.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 54 and objects to the allegations contained therein as improper conclusions of law and/or fact.

55.    The Chicago Trolley Marks were distinctive at the time Defendants registered the chicagotrolleyrentals.com domain name.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 55 and objects to the allegations contained therein as improper conclusions of law and/or fact.

56.    The acts of Defendants complained of herein evidence their bad faith intent to profit from the Chicago Trolley Marks.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 56 and objects to the allegations contained therein as improper conclusions of law and/or fact.

57.    The acts of Defendants complied of herein constitute cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

**ANSWER**:    CTRI denies the allegations contained in Paragraph 57 and objects to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A FIFTH CLAIM
### Trademark Dilution
### (765 ILCS 1036/65)

58.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:    CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

59.    Defendant's acts are likely to cause injury to plaintiff's business reputation and to dilute the distinctive quality of the famous Chicago Trolley Marks in violation of 765 ILCS 1036/65.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 59 and objects to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A SIXTH CLAIM
### Trademark Dilution
### (815 ILCS 505/1 *et seq.*)

60.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:    CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

61.     Defendants' acts constitute unfair competition and deceptive trade practices in violation of the Consumer Fraud and Deceptive Business Practices Act, in violation of 815 ILCS 505/1 *et seq.*

**ANSWER**: CTRI denies the allegations contained in Paragraph 61 and objects to

the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR A SEVENTH CLAIM
**Trademark Dilution**
**(815 ILCS 505/1 *et seq.*)**

62.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:     CTRI incorporates its responses to each and every allegation set

forth in paragraphs 1 through 43 with the same force and effect as if fully set forth

herein.

63.     Defendants' acts constitute willful and knowing deceptive trade practices in violation of the Illinois Deceptive Trade Practice Act, 815 ILCS 505/1 *et seq.*

**ANSWER**:     CTRI denies the allegations contained in Paragraph 63 and objects

to the allegations contained therein as improper conclusions of law and/or fact.

## AS AND FOR AN EIGHTH CLAIM
**Unfair Competition Under Illinois Common Law**

64.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:     CTRI incorporates its responses to each and every allegation set

forth in paragraphs 1 through 43 with the same force and effect as if fully set forth

herein.

65.    Defendants' acts constitute unfair competition in violation of the common law of the State of Illinois.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 65 and objects to the allegations contained therein as improper conclusions of law and/or fact.


## AS AND FOR AN EIGHTH CLAIM
**Passing Off Under Illinois Common Law**

66.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:    CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

67.    Defendants' acts constitute passing off in violation of the common law of the State of Illinois.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 67 and objects to the allegations contained therein as improper conclusions of law and/or fact.


## AS AND FOR A NINTH CLAIM
**Unjust Enrichment Under Common Law**

68.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 43.

**ANSWER**:    CTRI incorporates its responses to each and every allegation set forth in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

69.    Defendants' acts constitute unjust enrichment of Defendants at the expense of Plaintiff under the common law of the State of Illinois.

**ANSWER**:    CTRI denies the allegations contained in Paragraph 69 and objects to the allegations contained therein as improper conclusions of law and/or fact.

WHEREFORE, Defendant denies that it is liable to Plaintiff on any of the claims alleged; denies that Plaintiff is entitled to damages, treble or punitive damages, equitable relief, attorneys' fees, costs, pre-judgment interest or to any relief whatsoever; requests that judgment in its favor and against Plaintiff; and states as follows:

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint, on one or more counts set forth therein, fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Fair Use)

The claims made in the Complaint are barred, in whole or in part, by the doctrines of fair use, nominative fair use and/or descriptive use.

### THIRD AFFIRMATIVE DEFENSE
### (Innocent Infringement)

The claims made in the Complaint are barred, in whole or in part, because any infringement, if any, was innocent.

## FOURTH AFFIRMATIVE DEFENSE
### (Non-Infringement)

Defendants have not infringed any applicable trademarks or trade dress under federal or state law.

## FIFTH AFFIRMATIVE DEFENSE
### (No Damage)

Without admitting that the Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against Defendants in the Complaint, and the relief prayed for in the Complaint therefore cannot be granted.

## SEVENTH AFFIRMATIVE DEFENSE
### (Invalidity)

The claims made in the Complaint are barred, in whole or in part, on the basis that any marks or trade dress at issue are generic.

## EIGHTH AFFIRMATIVE DEFENSE
### (Laches)

The claims made in the Complaint are barred, in whole or in part, based on laches.

## ADDITIONAL DEFENSES

CTRI reserves the right to assert additional defenses based on information learned or obtained during discovery.

## COUNTER CLAIMS

Defendant and Counterclaim-Plaintiff, Chicago Trolley Rentals, Inc. ("CTRI") pleads the following Counterclaims against Plaintiff and Counterclaim-Defendant TRT Transportation, Inc. ("TRT").

## PARTIES

1.      CTRI is an Illinois corporation, having a regular and established place of business in Chicago, Illinois.

2.      On information and belief, TRT is an Illinois corporation, having a regular and established place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

3.      This is a counterclaim for declaratory judgment pursuant to 28 U.S.C. § 2201 in regard to an actual controversy between CTRI and TRT and for cancellation of a federal trademark registration pursuant to 15 U.S.C. § 1119.

4.      Subject matter jurisdiction of these Counterclaims arises under 28 U.S.C. § 1367 in that the Counterclaims form part of the same case or controversy as TRT's claims in the Complaint, and under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. §§ 1119 and 1121(a).

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391 (b) and (c), in that TRT  transacts business affairs within this District, and filed its Complaint in this Court.

## COUNTERCLAIM ONE
### Declaratory Judgment And Cancellation Of Federal Reg. No. 2,586,774

6.      CTRI hereby realleges Paragraphs 1 through 5 of CTRI's Counterclaims, as if fully set forth herein.

7.      On information and belief, TRT owns Federal Trademark Registration No. 2,586,774 for CHICAGO TROLLEY, in connection with sightseeing tour services and providing information in the field of sightseeing tours by means of a global computer network, in International Class 039, disclaiming the exclusive right to use "trolley" apart from the mark as shown.

8.      On information and belief, TRT's sightseeing tour services are offered exclusively in the Chicago-metro area.

9.      On information and belief, TRT offers trolleys as the vehicle by which it provides sightseeing tour services.

10.      CTRI offers sightseeing tour services using trolleys, limousines, and luxury cars.

11.      CTRI offers sightseeing tour services exclusively in the Chicago-metro area.

12.      CTRI and TRT are not the only two businesses in the Chicago-metro area that offer sight seeing services by trolley car.

13.      TRT was not the first business to offer sight seeing by trolly car in the Chicago-Metro area.

14.      The term "trolley" is a commonly used, generic term for electric streetcars.

15.      The term "Chicago" is a geographically descriptive term for the city having that name, located in Cook County, Illinois.

16.      The term "Chicago trolley" is a commonly used, generic term for electric street cars operating in the city of Chicago, located in Cook County, Illinois, as

evidenced by the attachments cited against TRT by the United States Patent and Trademark Office while TRT was attempting to register the mark at issue (attached hereto as Exhibit 1).

17.     The term "Chicago trolley" is the generic term used for electric street cars operating in Chicago, Illinois that it is incapable of functioning as a trademark irrespective of how much use, advertising, or promotion of the term "Chicago trolley" is made.

18.     The TRT's CHICAGO TROLLEY mark is and was, during all times relevant to this litigation, generic and incapable of indicating a source of goods or services.

19.     Reg. No. 2,586,774 for CHICAGO TROLLEY should be cancelled pursuant to 15 U.S.C. 1064(3), as CHICAGO TROLLEY is generic.

20.     The existence of Reg. No. 2,586,774 is damaging to CTRI. TRT has charged CTRI and Yildirim B. Aksoy with trademark infringement, claiming exclusive rights in the term CHICAGO TROLLEY based on its ownership of Reg. No. 2,586,774, and demanding that CTRI and Aksoy cease and desist from any further use of "Chicago trolley" in connection with its business of renting trolleys in Chicago, first through written cease and desist demands and then through its Complaint in the present case, all to the detriment of CTRI.


## COUNTERCLAIM TWO
### Declaratory Judgment Of Non-Infringement Of Trade Dress

21.     CTRI hereby realleges Paragraphs 1 through 20 of CTRI's Counterclaims, as if fully set forth herein.

22.     TRT alleges that painting "San Francisco-style trolleys with red paint on the lower half of the trolley, green paint on the upper half of the trolley, and yellow trim" is distinctive such that it warrants trade dress protection. (Plaintiff's Complaint, Paragraph 11).

23.     TRT is not the only company in the United States using a green, yellow, and red paint pattern on trolley cars.

24.     TRT was not the first company in the United States to use a green, yellow, and red paint pattern on trolley cars.

25.     CTRI purchases trolleys from a variety of sellers throughout the United States.  CTRI does not change the paint color or paint pattern of the trolleys after purchase nor does CTRI have any role in deciding how the trolleys are painted prior to purchase.

26.     The paint pattern and colors that TRT alleges to be distinctive are common to the trolley industry, and are incapable of acquiring distinctiveness due to the fact that it is generic.

**WHEREFORE**, CTRI respectfully prays for relief as follows:

a.   That, pursuant to 28 U.S.C. § 2201, this Court issue a declaratory judgment that "Chicago trolley" is generic and cannot function as a trademark and, pursuant to 15 U.S.C. § 1119, direct the Commissioner For Trademarks to cancel Reg. No. 2,586,774 and strike it from the Federal Register;

b.   That, pursuant to 28 U.S.C. § 2201, this Court issue a declaratory judgment that San Francisco-style trolleys with red paint on the lower half of the trolley,

green paint on the upper half of the trolley, and yellow trim are generic and cannot function as trade dress;

c. That this Court enter judgment for Defendant and Counterclaim-Plaintiff CTRI on all claims in Plaintiff and Counterclaim Defendant TRT's Complaint;

d. That the Complaint, and each and every purported claim for relief therein, be dismissed with prejudice.

e. That this Court grant and enter a judgment that CHICAGO TROLLEY is a generic term, and that Federal Trademark Reg. No. 2,586,774 for CHICAGO TROLLEY, be cancelled, and that the Director of the USPTO be provided with a certified Order of same;

f. That TRT and its agents, officers, attorneys, representatives, and those acting in concert and/or privity with them be preliminarily and permanently enjoined by this Court from suing, threatening to sue, or making any charges that CTRI has committed any acts of trademark infringement, unfair competition, or dilution respecting the term "Chicago trolley;"

g. That this Court assess the costs of this action, and attorneys' fees against TRT, under the provisions of the Trademark Act based upon findings that this case is exceptional, pursuant to 15 U.S.C. § 1117;

h. And that CTRI have such other and further relief as the Court may deem just.


Respectfully Submitted,


Dated: July 14, 2011                    By: /s/Aleksandra M. S. Vold
                                        Aleksandra M. S. Vold
                                        Attorney No. 6304058
                                        avold@voldlaw.com

                                        Vold, LLC
                                        105 W. Adams St. Suite 2800
                                        Chicago, IL 60603
                                        Telephone: 312-715-8653
                                        Facsimile: 312-268-7366

                                        ATTORNEY FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of *Defendant's Answer To Complaint, Affirmative Defenses, And Counterclaims Seeking Declaratory Judgment* was served in accordance with the Federal Rules of Civil Procedure on this 14th day of July, 2011, to the following electronically:


Alicia Morris Groos
Brandon M. Ress
Fulbright & Jaworski LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701


Daliah Saper
Saper Law Offices, LLC
505 N. LaSalle Suite 350
Chicago, Illinois 60654


*/s/ Aleksandra M. S. Vold*
Aleksandra M. S. Vold

# EXHIBIT 1

759813 **UNITED STATES PATENT AND TRADEMARK OFFICE**

| SERIAL NO. | APPLICANT | | PAPER NO. |
|---|---|---|---|
| | CHICAGO TROLLEY CO. | | |
| **MARK** | | | **ADDRESS:** |
| CHICAGO TROLLEY | | | **Commissioner for Trademarks** |
| **ADDRESS** | | **ACTION NO.** | **2900 Crystal Drive** |
| ROBERT P. HART | | 02 | **Arlington, VA 22202-3513** |
| BANNER & WITCOFF, LTD. | | | www.uspto.gov |
| TEN SOUTH WACKER DRIVE | | **MAILING DATE** | If no fees are enclosed, the address should |
| CHICAGO, ILLINOIS 60606 | | 08/04/00 | include the words "Box Responses - No Fee." |
| | | **REF. NO.** | Please provide in all correspondence: |
| | | | 1. Filing Date, serial number, mark and Applicant's name. |
| FORM PTO-1525 (5-90) | U.S. DEPT. OF COMM. PAT. & TM OFFICE | 4570.79875 | 2. Mailing date of this action. |
| | | | 3. Examining Attorney's name and Law Office number. |
| | | | 4. Your telephone number and ZIP code. |

## PRIORITY ACTION

| EXAMINING ATTORNEY | | PERSON CALLED/INTERVIEWED | TELEPHONE NUMBER | |
|---|---|---|---|---|
| | Shanna Winters | Janice Mitrius | | |
| X | TELEPHONE CALL | INTERVIEW DATE | X | ATTORNEY |
| | PERSONAL INTERVIEW | August 2, 2000 | | APPLICANT |

### CALL RECORD/NOTES

RE: Serial Number ▉▉▉▉

This case will be given priority as an amended case if Applicant or applicant's attorney responds to the requirements stated below within two months of the above mailing date. In any event, a proper response to this Priority Action must be received within SIX MONTHS from the mailing date stated above in order to avoid ABANDONMENT.

## FINAL OFFICE ACTION

This responds to applicant's communication of March 15, 2000. The amendment to the identification of services has been made of record. However, the proposed disclaimer is not accepted to overcome the geographical descriptiveness refusal. The examining attorney initially refused registration on the Principal Register because the mark is primarily geographically descriptive of the applicant's goods. Trademark Act Section 2(e)(2), 15 U.S.C. Section 1052(e)(2); TMEP section 1210.05. This refusal is hereby CONTINUED and made FINAL for the reasons stated below, and in the first Office Action on this application, which is incorporated by reference.[1]

The primary significance of the term "CHICAGO" is geographic. This is readily apparent from the dictionary definition which is attached to the first Office action. Applicant's services appear to come from the geographical place named in the mark. Therefore, a public association of the services with the place is presumed. *In re California Pizza Kitchen*, 10 USPQ2d 1704 (TTAB 1989); *In re Handler Fenton Westerns, Inc.*, 214 USPQ 848 (TTAB 1982).

---

[1] Please note first office action as it pertains to options relating to the Class 25 goods. (See p.2 of the First Office action Option (3).

7598 1339

-2-

It is well established that if the primary significance of a mark is to indicate a geographic location which is neither obscure nor remote and the applicant's services are manufactured or produced in the location indicated, then the public is likely to believe that the geographic term identifies the place from which the goods or services originate. *See In re Nantucket Allserve, Inc.*, 28 USPQ2d 1144 (TTAB 1993).

Applicant has argued that the mark is not descriptive of the services. However, it is not necessary that a term describe all of the purposes, functions, characteristics or features of the services to be merely descriptive. It is enough if the term describes one attribute of the services. *In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). In this instance the wording "Chicago" describes the geographic location the services will be rendered from and the word trolley indicates how the services are to take place. Applicant acknowledges that the advertising materials will be placed on the same vehicles used for the touring services. It is clear that a "trolley" (**trol·ley** also **trol·ly** (trŏl'ē) *noun plural* **trol·leys** also **trol·lies 1.** A streetcar. **2.** A device that collects electric current from an underground conductor, an overhead wire, or a third rail and transmits it to the motor of an electric vehicle.)[2] is a type of vehicle and very well may be the type of vehicle used.

Moreover, applicant's argument that there are other registrations including the term "Chicago" is not persuasive. See also *In re Hub Distributing, Inc.*, 218 USPQ 284 (TTAB 1983).

"It should be noted first that the Board does not take judicial notice of registrations that reside in the Patent Office, and that **the submission of a list of registrations is insufficient to make them of record** notwithstanding that they constituted a part of the record in another proceeding before the Board. Each case must be complete in and of itself and, **if applicant desired to have the Board consider these registrations in this proceeding, copies of these registrations should have been proffered.** *Cf. Rexall Drug Company v. Manhattan Drug Company*, 128 USPQ 114 (CCPA, 1960)."

*Duofold*, 184 USPQ at 640 (emphasis added).

Applicant merely lists the registrations. Applicant does not even state whether the marks have disclaimers of the wording "Chicago" which would evidence its geographic significance. As to applicant's references to the other "trolley" marks again the registrations have not been attached. However, for example Registration 1647685 (see enclosed) is not registered on the Principal without limitation, but rather is subject to acquired distinctiveness under Section 2(f). In this instance, Chicago trolley describes the means of accomplishing applicant's services, through Chicago trolleys. (See attached Nexis evidence of the usage of Chicago trolleys) The mark as presented has a clear unitary geographic connotation.

The goods-place association between the state of Chicago and the advertising services and sightseeing tours need not be established by specific evidence, as it is presumed that the services

---

[2]*The American Heritage® Dictionary of the English Language, Third Edition* copyright © 1992 by Houghton Mifflin Company. Electronic version licensed from INSO Corporation; further reproduction and distribution restricted in accordance with the Copyright Law of the United States. All rights reserved.

75981339

-3-

have some nexus with the place named. That presumption is based on the fact that the applicant's business is located in Chicago, and thus it is axiomatic that the services do in fact originate there.

Because the mark is primarily geographic descriptive of the goods which are recited in the application, registration must be refused pursuant to Section 2(e)(2) of the Trademark, 15 U.S.C. § 1052(e)(2). This refusal is hereby CONTINUED and made FINAL.

Rather than further contesting the issue of geographic descriptiveness of the mark in the present application, the applicant may opt to amend the application to seek registration on the Supplemental Register **after the filing of an acceptable Allegation of Use**. Pursuant to 15 U.S.C. Sections 1091 through 1096, the Supplemental Register allows registration of marks which are capable of acting as a source identifier for certain goods but which do not meet the statutory requirements for registration on the Principal Register. If applicant's amends to the Supplemental Register applicant must disclaim the generic wording "trolley" apart from the mark as shown. Trademark Act Section 6, 15 U.S.C. Section 1056; TMEP sections 1213 and 1213.02(a). The computerized printing format for the *Trademark Official Gazette* requires a standard form for a disclaimer. TMEP section 1213.09(a)(i). A properly worded disclaimer should read as follows:

No claim is made to the exclusive right to use "trolley" apart from the mark as shown.

See *In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

## Proper Response

Please note that the only appropriate responses to a final action are either (1) compliance with the outstanding requirements, if feasible, or (2) filing of an appeal to the Trademark Trial and Appeal Board. 37 C.F.R. Section 2.64(a). If the applicant fails to respond within six months of the mailing date of this refusal, this Office will declare the application abandoned. 37 C.F.R. Section 2.65(a).

Shanna Winters
Shanna Winters
Trademark Attorney
US Patent & Trademark Office
Law Office 108
(703) 308-9108 x.186

*** User: sblaustein   ***  Serial Number: 74033600   ** 8/2/00 2:19:34 PM  **
[Typed Drawing]

Mark
     SAN DIEGO TROLLEY

Goods and Services
     IC 039.  US 105.  G & S: public rail transit services.  FIRST USE:
     19810726.  FIRST USE IN COMMERCE: 19810726

Mark Drawing Code
     (1) TYPED DRAWING

Serial Number
     74033600

Filing Date
     March 1, 1990

Publication for Opposition Date
     March 19, 1991

Registration Number
     1647685

Registration Date
     June 11, 1991

Owner Name and Address
     (REGISTRANT) San Diego Metropolitan Transit Development Board PUBLIC
     AGENCY CALIFORNIA Suite 1000 1255 Imperial Avenue San Diego CALIFORNIA
     921017490

Disclaimer Statement
     NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TROLLEY" APART FROM THE
     MARK AS SHOWN

Type of Mark
     SERVICE MARK

Register
     PRINCIPAL-2(F)

Affidavit Text
     SECT 15.  SECT 8 (6-YR).

Live Dead Indicator
     LIVE

*** Search: 2 *** Document Number: 1 ***

MAIL-IT REQUESTED: JULY 30, 2000                    10083K

       CLIENT: USPTO
      LIBRARY: NEWS
        FILE: ALLNWS

YOUR SEARCH REQUEST AT THE TIME THIS MAIL-IT WAS REQUESTED:
 "CHICAGO TROLLEY"  ·

NUMBER OF STORIES FOUND WITH YOUR REQUEST THROUGH:
     LEVEL  1...    97

LEVEL  1 PRINTED

THE SELECTED  STORY NUMBERS:
23,30,47,50-51,57,80,89-90,92-95,97

DISPLAY FORMAT: 30 VAR KWIC

SEND TO: BLAUSTEIN, SHANNA
       TRADEMARK LAW LIBRARY
       2101 CRYSTAL PLAZA ARC
       MAIL BOX 3104
       ARLINGTON VIRGINIA 22202-4600

********************************00946********************************

LEVEL 1 - 23 OF 97 STORIES

Copyright 1999 Chicago Tribune Company
Chicago Tribune

June 25, 1999 Friday, CHICAGO SPORTS FINAL EDITION

SECTION: FRIDAY; Pg. 55; ZONE: CN; On the go. Day trip.

LENGTH: 523 words

HEADLINE: EAST TROY TROLLEY FOLLOWS TRACKS BACK IN TIME

BYLINE: By Mitch Martin. Special to the Tribune.

BODY:
... trolley and the fresh country breeze. The museum rotates the electric trolleys, so visitors may ride in East Troy Open Car 20 one day, a Philadelphia & Western Rapid Transit Car 64 the next.

The museum has several **Chicago trolleys,** including a 1959 CTA car and a fleet of South Shore cars built in the late 1920s. Volunteers are often working in the nearby carbarn on restoration projects, and visitors are allowed to watch.

Several times each summer, the ...

LEVEL 1 - 30 OF 97 STORIES

Copyright 1998 The Indianapolis Newspapers, Inc.
THE INDIANAPOLIS STAR

September 20, 1998 Sunday  CITY FINAL EDITION

SECTION: LIFE/STYLE;' Pg. J09;  FAMILY NOTEBOOK

LENGTH: 742 words

HEADLINE: Love of locomotives can railroad interests

BYLINE: KATHLEEN SCHUCKEL

BODY:
    ... Nov. 14 and 15,
from the Indiana Transportation Museum in Noblesville to the Great
American Train Show at the Indiana State Fairgrounds.

    The transportation museum is open from 10 a.m. to 5 p.m.
weekends.  Visitors can travel on a 1924 **Chicago trolley** or take a
diesel locomotive to Atlanta, Ind., on autumn weekends.  On Dec. 12,
children can take a train ride while listening to the classic Polar
Express by Chris Van Allsburg (Houghton Mifflin Co., $ ...

LEVEL 1 - 47 OF 97 STORIES

Copyright 1997 Burrelle's Information Services
CBS News Transcripts

SHOW: SUNDAY MORNING (9:00 AM ET)

March 16, 1997, Sunday

LENGTH: 1378 words

HEADLINE: RICHARD HUNT; ARTIST SCULPTS METAL INTO WORKS OF ART

ANCHORS: CHARLES OSGOOD

REPORTERS: JACQUELINE ADAMS

BODY:
    ... a kind of alchemy, transforming cold, hard brass and bronze and stainless steel into work that can warm the human spirit. Last winter at his studio, a huge space that was once an electrical substation for generating power for Chicago's trolley lines, we watched him forging a piece that today is called "Wing Ways."

    (Footage of sculpture)

    Mr. HUNT: (Voiceover) It's gone through this transformation from being raw material to the finished sculpture.

    There are these various aspects of it that are--are different kinds of wings.

    (Footage of ...

LEVEL 1 - 50 OF 97 STORIES

Copyright 1996 Chicago Sun-Times, Inc.
Chicago Sun-Times

August 23, 1996, FRIDAY, Late Sports Final Edition

SECTION: WEEKEND PLUS; TOURS; Pg. 28; NC

LENGTH: 1011 words

HEADLINE: Surf and turf: You can tour the town by land and by sea

BYLINE: By Celeste Busk

BODY:
... 3432.

  Chicago Motor Coach Co. Double Decker Buses: Narrated bus tours of downtown leave daily from various locations including the Sears Tower (Jackson and Franklin) and Water Tower (Pearson and Michigan). $ 5-$ 7. (312) 922-8919.

  **Chicago Trolley** Company Tours: Narrated tours on trolleys include stops at Water Tower, Sears Tower, Field Museum and Shedd Aquarium. Vehicles pick up and drop off every 15-20 minutes at each location. Special ...

TOUR23081996

LEVEL 1 - 51 OF 97 STORIES

Copyright 1996 Chicago Sun-Times, Inc.
Chicago Sun-Times

August 2, 1996, FRIDAY, Late Sports Final Edition

SECTION: WEEKEND PLUS; Pg. 48; NC

LENGTH: 2080 words

HEADLINE: Full steam ahead;
Museums fire up train fans

BYLINE: By Bob Kurson

BODY:
   ... 1851. Many visitors marvel at the space-age-looking Zephyr, a 1936 classic diesel engine that appeared in such recent movies as "A League of Their Own," "The Babe" and "Groundhog Day."

   Guests also can hop aboard a glimmering **Chicago trolley** car from 1905, as long as they observe the overhead sign that warns, "Spitting in this car is forbidden by City Ordinance." Original leather handstraps and Chinese rattan seats look much the way they did when trolley rides in Chicago cost 7 cents ...

TRAIN02081996

LEVEL 1 - 57 OF 97 STORIES

Copyright 1995 Chicago Tribune Company
Chicago Tribune

December 17, 1995 Sunday, CHICAGOLAND FINAL EDITION

SECTION: TRANSPORTATION; Pg. 14; ZONE: CN; AUTO LETTERS.

LENGTH: 813 words

HEADLINE: CHEVY DEVOTION NOT JUST A CAPRICE

BYLINE: By Jim Mateja, Tribune Auto Write.

BODY:
    ... so we know where you are at all times so we can avoid you.

    I saw a bumper sticker that said "Cat missing? Look under my tire." You are a good writer, albeit kinky. Please road test an old **Chicago trolley.** My birthday is coming up, a nice inexpensive card would be nice. O.B., Chicago

    A--Have missed your regular letters, O.B. Glad you came back from the Planet Vulcan for the holidays. How's Spock doing? We'll be sure to send ...

LEVEL 1 - 80 OF 97 STORIES

Copyright 1994 Chicago Sun-Times, Inc.
Chicago Sun-Times

July 23, 1994, SATURDAY, Late Sports Final Edition

SECTION: EDITORIAL; THE FORUM; Pg. 16

LENGTH: 623 words

HEADLINE: Outdated 'Trolley-Folly' Is Boondoggle to Taxpayers

BYLINE: By Jim Tobin

BODY:
   ... only one-sixth that of the circulator and travel times would be
approximately the same. A high-speed, state-of-the-art monorail system would
cost $ 10 million a mile, compared with the $ 77 million a mile for this 19th
century trolley system.

   The **Chicago trolley** would take taxpayers for a very expensive ride, and the
land speculators, financial institutions and politically-connected contractors
reaping windfall profits would be collecting the fares.

   Gov. Edgar should publicly oppose this assault on taxpayers' pocketbooks and
work to defeat the state portion of the ...

LN-ACC-NO: FORUM23071994

LEVEL 1 - 89 OF 97 STORIES

Copyright 1993 Times Newspapers Limited
The Times

July 14, 1993, Wednesday

SECTION: Features  .

LENGTH: 1131 words

HEADLINE: This is the one that they want

BYLINE: Jeremy Kingston

BODY:
    ... Theatre; this is newish-oldish. In fact, it neatly satisfies the old
wives' advice for the ideal wedding dress. Something old, something new,
something borrowed, something blue though the bluest bits from the first ever
production (in a **Chicago trolley** barn) were expunged long ago. And they were
navy blue. Marine Blue. David Gilmore, director of the current revival, covered
my tape recorder with his hand and regaled me with a line from the original
script, drawled by one of sweet little Sandy's friends to ...

LEVEL 1 - 90 OF 97 STORIES

Copyright 1991 Chicago Tribune Company
Chicago Tribune


July 7, 1991, Sunday, FINAL EDITION

SECTION: CHICAGOLAND; Pg. 1; ZONE: C

LENGTH: 1016 words

HEADLINE: Road, transit funds are still facing curves

BYLINE: By Blair Kamin, Suburban affairs writer

BODY:
    ... elevated train in Chicago.

    Likely to be affected: the upcoming $450 million reconstruction of the
Kennedy Expressway, a host of suburban highway improvements, the daily fares of
1.8 million Chicago Transit Authority riders and a proposed $600 million
downtown **Chicago trolley** system, a pet project of Mayor Richard Daley's.

    They are among the top priorities of Illinois transportation officials and
the Illinois congressional delegation as the first major overhaul of the federal
transportation system in 35 years makes its way through Congress.

    So ...

LEVEL 1 - 92 OF 97 STORIES

Copyright 1990 Chicago Tribune Company
Chicago Tribune

August 7, 1990, Tuesday, NORTH SPORTS FINAL EDITION

SECTION: CHICAGOLAND; Pg. 3; ZONE: C

LENGTH: 596 words

HEADLINE: Trolley funds get Senate OK
U.S. would help pay to design downtown light rail line

BYLINE: By John W. Fountain

BODY:
   The proposed multimillion-dollar downtown **Chicago trolley** system has moved a
step closer to getting on track as the U.S. Senate agreed to contribute federal
funds to design the project, city officials said Monday.

   The Senate on Saturday night approved Illinois Sen. Paul Simon's full ...

LEVEL 1 - 93 OF 97 STORIES

Copyright 1990 Chicago Tribune Company
Chicago Tribune

July 8, 1990, Sunday, CITY EDITION

SECTION: CHICAGOLAND; Pg. 1; ZONE: C

LENGTH: 748 words

HEADLINE: Battle on judgeships looms
GOP, minorities regroup to get more seats in Cook

BYLINE: By Daniel Egler, Chicago Tribune

DATELINE: SPRINGFIELD

BODY:
... balance the financing plan.

In addition, the coalition strongly supported a proposal to regulate what members called obscene advertising on Chicago Transit Authority buses and was at least partially responsible for stalling legislation for a downtown **Chicago trolley** system.

The state's Supreme Court ruled last Tuesday without dissent that the 1989 law that called for the election of First District Appellate Court judges from five Cook County districts was unconstitutional. The court also said that another provision for the election of ...

LEVEL 1 - 94 OF 97 STORIES

Copyright 1990 Chicago Tribune Company
Chicago Tribune

July 2, 1990, Monday, NORTH SPORTS FINAL EDITION

SECTION: CHICAGOLAND; Pg. 3; ZONE: C

LENGTH: 656 words

HEADLINE: Legislature ends session on uneventful note

BYLINE: By Daniel Egler and Rick Pearson, Chicago Tribune

DATELINE: SPRINGFIELD

BODY:
    ... construction of a domed stadium, the proposed building of two new
tollways to skirt Chicago's growing suburbs, a $70-million marina program that
includes more Navy Pier financing and a Senate-approved plan for a downtown
Chicago trolley system.

    "November is going to be heavy, very heavy," said Gov. James Thompson, who
neither won nor lost much in his 14th and final spring session.

    "I think this is perhaps one of those sessions where I ought to reserve
judgment until the (real) ...

LEVEL 1 - 95 OF 97 STORIES

Copyright 1990 Chicago Tribune Company
Chicago Tribune

June 20, 1990, Wednesday, NORTH SPORTS FINAL EDITION

SECTION: CHICAGOLAND; Pg. 4; ZONE: C

LENGTH: 495 words

HEADLINE: Proposed Loop trolley wins an important OK

BYLINE: By Mitchell Locin, Chicago Tribune

DATELINE: WASHINGTON

BODY:
   The proposed downtown **Chicago trolley** system Tuesday won the backing of key
House transportation budgetmakers, who agreed to contribute federal funds to
design the project.

   The House Appropriations Transportation Subcommittee, meeting behind closed
doors, settled on $15 million, $2 million less than ...

LEVEL 1 - 97 OF 97 STORIES

Copyright 1987 Chicago Tribune Company
Chicago Tribune

February 19, 1987 Thursday, SPORTS FINAL EDITION

SECTION: SPORTS; Pg. 1; ZONE: C

LENGTH: 855 words

HEADLINE: STEINBRENNER IS OFF AND REMINISCING

BYLINE: By Jerome Holtzman.

BODY:
    ... played against some of the teams in Chicago's Catholic League, prep
powerhouses such as Leo and Mt. Carmel. But the game he remembers most was
against Pullman Tech. "It was on a hard dirt field," he recalled. "They must
have thought I was the **Chicago trolley** because all they did was run over me."

    Whether they're amateurs or professionals, Steinbrenner is convinced that
all players prefer a tough coach. "They might cuss and moan, but they want
discipline. That's why Ditka is a winner. To me, he exemplifies all the things I
think are great."

    Steinbrenner ...