IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRT TRANSPORTATION, INC. D/B/A )
CHICAGO TROLLEY CO., )
              )
        Plaintiff, )     No. 11 C 03693
              )
        vs. )     Judge John J. Tharp, Jr.
              )
              )
CHICAGO TROLLEY RENTALS, INC., and )
YILDIRIM B. AKSOY, )
              )
        Defendants. )

### Memorandum Opinion and Order

Before the Court are competing motions by Plaintiff TRT Transportation, Inc., and Defendants Chicago Trolley Rentals and Yildirim B. Aksoy arising from their efforts to settle the disputes giving rise to this lawsuit. TRT asserts that the parties reached an enforceable settlement agreement at the conclusion of a settlement conference conducted by Magistrate Judge Cox on January 24, 2012. Defendants maintain that no enforceable agreement was reached during the settlement conference. After the parties filed their motions, Judge Cox issued a Report and Recommendation ("R&R"), recommending to this Court that Defendants' motion be denied and that Plaintiff's motion be granted.

The Court has reviewed Magistrate Judge Cox's thorough R&R and adopts its reasoning and recommendation resolving the issue of whether the parties reached an enforceable agreement at the conclusion of the settlement conference. Defendants' objections to the R&R are unpersuasive. Their primary contention is that enforceability of the terms agreed to in the settlement conference was expressly intended to be "subject

to negotiation of a formal settlement agreement [and] an agreed injunction." The Court agrees with the Defendants that, where parties have made the enforceability of an agreement "subject to" the execution of a written agreement, they have manifested an intention not to be bound until that condition precedent has been realized. The problem with the Defendants' argument, however, is that they agreed that certain material terms put on the record at the conclusion of the settlement conference were not "subject to" completion of a subsequent agreement, but rather "are enforceable."

The transcript of the settlement conference reflects that, when Plaintiff's counsel stated that "all of this is going to be subject to a negotiation of a formal settlement [and] an agreed injunction," the Magistrate Judge alertly clarified that the parties intended the terms put on the record to be "enforceable." Mr. Pearson, for Plaintiff, and Mr. Aksoy, for Defendants, agreed. "The parties decide for themselves whether preliminary negotiations will bind them, and they do so through their words." *Abbott Laboratories v. Alpha Therapeutic Corp.,* 164 F.3d 385, 387 (7th Cir. 1999). The plain and unmistakable import of the exchange concerning enforceability is that the parties agreed, notwithstanding their intention to negotiate a more comprehensive agreement, that the terms put on the record at the conclusion of the conference would be "enforceable." Otherwise, the exchange between the parties and the Court about the enforceability of the terms would have been meaningless. Significantly, Defendants' do not offer a plausible explanation—or, indeed, any explanation at all—for why they agreed that those terms were "enforceable" if in fact they intended those terms to remain *unenforceable* unless and until a more comprehensive agreement had been executed.

Defendants also object that their subsequent negotiations reflect that they did not intend the terms agreed to at the settlement conference to be enforceable absent further negotiation and agreement as to additional terms and demonstrates that they had agreed to only some, but not "all," material terms. Unquestionably, the parties continued to negotiate after the settlement conference. That fact, however, is not at all inconsistent with a prior agreement that the material terms they had agreed to were "enforceable" whether or not the parties subsequently agreed to additional—even material additional—terms. The question of enforceability of the terms agreed to during the settlement conference does not turn on whether the parties had reached agreement on "all" terms that might conceivably be material to their relationship and dispute, but whether the terms that they did agree to were sufficiently definite and certain "to ascertain what the parties have agreed to do." *Academy Chicago Publishers v. Cheever,* 144 Ill. 2d 24, 29 578 N.E.2d 981, 983 (Ill. 1991). *Cheever* and the other cases cited by Defendants stand for nothing more.

Not surprisingly, then, the Defendants also argue that—notwithstanding their agreement that the terms set forth at the conclusion of the settlement conference "are enforceable"—the terms are too incomplete and vague to be enforced. Defendants' objections do not explain why that is so. Their motion to deny enforcement does not shed much more light on this contention, as it argues only that "the provision that '[t]he defendant will have fair use' is impermissibly vague and unenforceable" but fails to elaborate or to cite any authority supporting their contention. To the contrary, as Plaintiff points out, "fair use" in the context of trademark infringement claims is a defense that permits "the use of the name, term, or device charged to be an infringement . . .

otherwise than as a mark," such as a use "which is descriptive of and used fairly and in good faith only to describe . . . goods and services . . . ." 15 U.S.C. § 1115(b)(4). The term is not too indefinite to enforce; it is a staple of trademark infringement cases. Significantly, the parties do not appear to have had any difficulty agreeing on language that defines the scope of fair use by the Defendants of the terms included in Plaintiff's marks (see paragraph 16 of the Final Judgment and Permanent Injunction, below).

Putting the letter of their objections to the side,[1] the gist of the Defendants' resistance to enforcement of the terms set forth at the settlement conference appears to derive from the fact that those terms do not expressly provide that the Defendants' use of the phrase "Trolley Rentals in Chicago" is exclusive. They maintain that they would never have agreed to a settlement had Plaintiff not foresworn its own use of that phrase, asserting that Plaintiff's agreement to do so was "implicit" in the parties' negotiations before and during the settlement conference. As the R&R recounts, however, Defendants made no attempt to address this issue during the settlement conference, despite the fact that the Magistrate Judge took pains to ask the parties if there was "[a]nything else that anybody would like to add to the record." The point of documenting the agreements reached was to ensure that the implicit was made explicit. Defendants said nothing,

---

[1] Defendants also object to the R&R's "premature and summary" rejection of their request to dismiss Plaintiff's claims based on their allegation that Plaintiff breached the confidentiality of the settlement negotiations by contacting "one or more third parties and asked them to also begin using "TROLLEY RENTALS IN CHICAGO" to generate website traffic, thereby diverting prospective customers from Defendants . . . ." They ask that the Court enter and continue their motion to dismiss, or deny it without prejudice, "pending further factual development thereto." The Magistrate Judge did not, however, recommend denial of that motion with prejudice; rather, she indicated that "without more" than the unsubstantiated hearsay evidence offered in the motion, she had no basis to address a potential sanction. The Court agrees and therefore denies the motion without prejudice.

however, and they cannot now persuasively argue that their silence obviates their express agreement that the terms put on the record "are enforceable."

Accordingly, the Court concurs with the R&R's recommendation to deny Defendants' motion and, to the extent that it seeks enforcement of the terms agreed to by the parties on January 24, 2012, to grant the Plaintiff's motion. The Court declines, however, to enter an injunction that adds terms to those the parties expressly agreed to during the settlement conference. Although the parties appear to have reached tentative agreement as to additional terms during the course of their negotiations following the settlement conference, they have not yet agreed that those terms (unlike the terms put on the record during the settlement conference) are enforceable in the absence of a fully executed written agreement. The Court will not finalize a further agreement for the parties, though it remains open to the parties to do so.

Based on the foregoing, and as explained further in the final paragraph of this Opinion, unless the parties have submitted an executed written settlement agreement to the Court on or before August 13, 2012, the Court will enter the Agreed Final Judgment and Permanent Injunction set forth below, based on the terms agreed by the parties on January 24, 2012:[2]

## AGREED FINAL JUDGMENT AND PERMANENT INJUNCTION

1.  The Court has jurisdiction of the parties and the subject matter under this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1367.

---

[2] This injunction represents a version of the proposed injunction set forth by Magistrate Judge Cox in her R&R, modified to remove material terms that were not agreed to by the parties during the January 24 settlement conference. Neither party has objected to the R&R's phrasing of the terms agreed to during the settlement conference and, accordingly, the Court has generally adopted that phrasing.

2.    Plaintiff TRT Transportation, Inc. d/b/a Chicago Trolley Co. ("Chicago Trolley" or "Plaintiff") is a corporation duly organized and existing under the laws of the State of Illinois, having an office and principal place of business at 615 West 41st Street, Chicago, Illinois.

3.    Defendant Chicago Trolley Rentals, Inc. ("CTRI") is a corporation duly organized and existing under the laws of the State of Illinois, having an office and principal place of business at 3516 North Lawndale Avenue, Chicago, Illinois.

4.    Defendant Yildirim B. Aksoy ("Aksoy") is an individual residing in this District, and is the President and sole shareholder of CTRI. Aksoy personally directed the actions of CTRI that are the subject of this lawsuit.

5.    Plaintiff offers sightseeing tours of metropolitan Chicago, rents out trolley-like vehicles for parties, weddings, pub crawls, and other special events, offers advertising and informational services, and sells ancillary products (such as T-shirts and hats) in connection with its goods and services.

6.    Plaintiff contends that since at least as early as 1994, plaintiff has used the name and mark CHICAGO TROLLEY in connection with its goods and services. Plaintiff also contends that it has also used the marks CHICAGO TROLLEY & DOUBLE DECKER CO. and RIDE THE RED & GREEN TROLLEYS in connection with its goods and services for many years. Plaintiff also contends that it has acquired common law trademark rights through its extensive use of these names and marks.

7.    Plaintiff contends that it has used a trade dress for many years - consisting of San Francisco-style trolley-like vehicles with red paint on the lower half of the vehicle, green paint on the upper half, and yellow trim - which it asserts is distinctive and protectable for Plaintiff's services (the "Red and Green Trolley Trade Dress").

8.    Plaintiff is the owner of the following federal trademark registrations (the "Chicago Trolley Registrations"):

    a.    CHICAGO TROLLEY, U.S. Registration No. 2,586,774;

    b.    CHICAGO TROLLEY, U.S. Registration No. 2,644,925;

    c.    RIDE THE RED & GREEN TROLLEYS, U.S. Registration No. 2,537,578; and

      d.     CHICAGO TROLLEY & DOUBLE DECKER CO. & Design, U.S. Registration No. 3,827,079.

9. The marks and names identified in the preceding paragraph, the Red and Green Trolley Trade Dress, and the Chicago Trolley Registrations are hereafter collectively referred to as the "Chicago Trolley Marks."

10. Plaintiff has registered and owns the domain name <chicagotrolley.com> and has advertised its services on the Internet via its website displayed at www.coachusacom/chicagotrolley. Plaintiff also owns the <chicagotrolleyweddings.com> and <www.chicagotrolleypubcrawls.com> domain names.

11. Plaintiff contends that Defendants launched a competing business offering substantially identical services under the substantially identical name "Chicago Trolley Rentals." Specifically, Defendants offer trolley-like vehicles for rent for tours, parties, weddings, and pub crawls. The "Chicago Trolley Rentals" name, mark, and any variants of the foregoing used by Defendants are collectively referred to as "Defendants' Marks."

12. As of January 24, 2012, Defendants owned two trolley-like vehicles whose exteriors are predominantly painted red and green (the "Existing Vehicles").

13. Defendants have registered, used, and own the domain names <chicagotrolleyrentals.com> and <chicagotrolleyrental.com> (collectively, "Defendants' Domains").

14. Plaintiff claims that Defendants have sold and continue to offer products and services which infringe and dilute Plaintiff's federally registered trademarks and common law rights, and otherwise have competed and continue to compete unfairly with Plaintiff, based upon, *inter alia,* allegations of Defendants' use of Defendants' Marks in advertising, on vehicles, online, and in all manner of services related to Defendants' business. In addition, Plaintiff claims that Defendants have infringed and continue to infringe on Plaintiff's unique and distinctive trade dress, and that Defendants have violated federal laws against cybersquatting. Defendants have denied all liability in this matter.

15. The parties entered into a negotiated agreement before this Court on January 24, 2012. Pursuant to the agreement of the parties and review of the record, the Court hereby finds that there is legally sufficient evidence to support entry of this Final Judgment and Permanent Injunction, and that entry of the same is in the public interest.

16. IT IS ORDERED that 30 days after entry of this Agreed Final Judgment and Permanent Injunction, Defendants and their respective officers, agents, servants, employees and related companies, and those persons in privity or active concert or participation with them, are permanently enjoined and restrained from:

(a) displaying, advertising, or otherwise using the phrase "Chicago Trolley Rentals" or the words "Chicago" and "Trolley" immediately adjacent to each other or in any form or manner that is confusingly similar to Plaintiff's Chicago Trolley Marks; Defendants are further enjoined from displaying, advertising, or otherwise using any mark, name, domain name, or other trade designation which depicts, contains, includes, or consists of "Chicago" and "Trolley" or their phonetic equivalents immediately next to each other (or in reverse order), or which is otherwise likely to cause confusion with the Chicago Trolley Marks.

(b) notwithstanding the foregoing, the phrase "trolley rentals in Chicago" may be used by Defendants in a manner that is merely descriptive, or generic, or as it was used on Defendants' website on January 24, 2012.

(c) notwithstanding the foregoing, the non-public, non-consumer facing purchase and use of descriptive keyword, search engine titles, and metatags for the goods and services provided by Defendants shall not constitute a violation of the Agreed Final Judgment and Permanent Injunction. This provision shall not be construed to allow purchase or use of any public facing keywords, search engine titles, or metatags for the goods and services provided by Defendants. By way of illustration only, Defendants may purchase and use keywords or internet search terms comprising the terms CHICAGO, TROLLEY, or CHICAGO TROLLEY, or variants thereof, through Google AdWords or similar paid placement means.

17. IT IS FURTHER ORDERED that Defendants shall take all steps necessary to transfer ownership and control of Defendants' Domains to Plaintiffs within 30 days after entry of this Agreed Final Judgment and Permanent Injunction. Plaintiff may take the steps necessary to maintain ownership and control of Defendants' Domains, but otherwise agrees that it will not use Defendants' Domains once ownership and control has been transferred. For the sake of clarity, Defendants' Domains will remain registered by Plaintiff after being transferred, but they will remain dead links while in the possession of Plaintiff.

18. IT IS FURTHER ORDERED that Defendants will not purchase or use trolleys or trolley-like vehicles whose exteriors are painted predominantly red and green in the future, but notwithstanding the foregoing, Defendants may continue to use the Existing Vehicles.

19.    IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, each party will bear its own costs, including attorneys' fees.

20.    IT IS FURTHER ORDERED that this Court shall have continuing jurisdiction with regard to the terms of this Final Judgment and Permanent Injunction.

21.    IT IS FURTHER ORDERED that any relief not expressly granted herein is DENIED.

22.    This is a FINAL JUDGMENT with respect to all claims and parties.

In lieu of entry of the foregoing Final Judgment and Permanent Injunction, the parties may submit to the Court, on or before August 13, a fully executed Settlement Agreement that (among other things) (i) includes an agreed injunction that may be entered with the Court's approval and (ii) provides for the dismissal of this action with prejudice.

Entered:  July 26, 2012

John J. Tharp, Jr.
United States District Judge

9